

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRENCHIE UPTON,            )
                           )
          Plaintiff,       )
                           )
    v.                     )
                           ) Case No. 09 C 3954
DEPAUL UNIVERSITY,         )
                           ) Judge John W. Darrah
          Defendant.       )

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant DePaul University's ("DePaul") Motion for Summary Judgment on all counts of Plaintiff Frenchie Upton's Second Amended Complaint. As discussed below, Plaintiff failed to file a response to DePaul's Motion.

## BACKGROUND[1]

Plaintiff has failed to respond to DePaul's statement of facts. A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

The following facts are taken from DePaul's statements of undisputed material facts submitted in accordance with Local Rule 56.1. *Cf. Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (recounting the facts for purposes of defendant's

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).

summary judgment motion based solely upon defendant's version of events, where plaintiff failed to properly file response).

Plaintiff was hired by DePaul as a Public Safety Officer ("PSO") in November 2002, by Randy Shire, the Assistant Director in the Department of Public Safety ("the Department") of DePaul. (Def.s 56.1(a)(3) ¶ 3.) Plaintiff's employment was terminated on April 5, 2006, on the basis of unacceptable and unprofessional behavior. (*Id.* ¶¶ 58-59.) During his employment at DePaul, Plaintiff was repeatedly counseled and disciplined for violations of DePaul's policies. (*Id.* ¶¶ 3, 5-12.)

On July 15, 2003, another PSO reported that Plaintiff made a threatening comment. (*Id.* ¶ 6.) On February 17, 2004, Plaintiff received verbal counseling for four instances of tardiness. (*Id.* ¶ 8.) On August 3, 2004, Plaintiff received verbal counseling for seven unexcused absences. (*Id.* ¶ 9.) Subsequently, Plaintiff had four more unexcused absences. (*Id.* ¶ 11.) On March 1, 2005, Plaintiff again received verbal counseling for three instances of tardiness. (*Id.* ¶ 12.)

On July 21, 2005, Plaintiff requested to meet with Robert Wachowski, the Director of Public Safety, to discuss Plaintiff's complaints regarding the management style of his supervisor, Department procedure, and what he described as unfair treatment based on his race. (*Id.* ¶ 13.) In response, Wachowski instructed Plaintiff to contact the Department investigator, Paul Naselli, and provide Naselli with the information so that Naselli could investigate Plaintiff's complaints. (*Id.* ¶ 15.) On August 4, 2005, Wachowski sent Plaintiff an email stating that Plaintiff had not yet contacted the Department investigator, that Plaintiff was to inform Wachowski in writing at the end of

2

his shift on August 5, 2010, whether he intended to proceed with his complaints, and that Plaintiff was to contact the investigator by August 8, 2005, if he intended to proceed. (*Id.* ¶ 15.)

On August 12, 2005, Wachowski once again informed Plaintiff by email that Plaintiff should contact the investigator by August 15, 2005, so that the investigation could proceed in a timely manner. (*Id.* ¶ 16.) On August 24, 2005, Plaintiff refused to meet Naselli. (*Id.* ¶ 17.)

On August 25, 2005, Wachowski emailed Plaintiff and requested that he meet with Donna Washington, the Manager of Employee Relations in the Office of Human Resources, regarding his complaints and concerns. (*Id.* ¶ 18.) On September 12, 2005, Plaintiff delivered to Washington a complaint entitled Public Safety Department Complaint Issues, which generally stated that Plaintiff had been subjected to racial alienation and that DePaul had treated other non-African American officers favorably. (*Id.* ¶ 19-20.) Washington investigated the September 2005 complaint and found no evidence that Plaintiff was the subject of any treatment or harassment on the basis of race. (*Id.* ¶ 24.) Washington did not release the September 12, 2005 complaint to anyone in the Department. (*Id.* ¶ 23.)

In early 2006, at Plaintiff's request, Wachowski changed the supervisory structure so that Plaintiff was assigned to report to Sergeant Evita Evans. (*Id.* ¶ 27.) In March 2006, Evans received a radio communication from Plaintiff, who requested that Plaintiff change the angle of a security camera in the lobby of DePaul Center; at the time, Plaintiff was sitting at the DePaul Center information desk. (*Id.* ¶ 28.) Plaintiff's radio

3

transmission was recorded, as was a video recording of Plaintiff at the information desk. (*Id.* ¶ 29-30.) Plaintiff's supervisors determined that Plaintiff engaged in improper and unprofessional behavior, including insubordination towards Evans, and had displayed a negative professional image to the public. (*Id.* ¶ 32.)

Wachowski, Shire, and Evans demanded written counseling. (*Id.* ¶ 33.) On March 28, 2006, Shire and Evans met with Plaintiff to discuss the incident and to issue Plaintiff a written counseling. (*Id.* ¶ 35.) Plaintiff was argumentative and continually interrupted the meeting; he declined to sign the written counseling form, which was given to him on that day. (*Id.* ¶ 36.)

On March 29, 2006, Plaintiff filed a formal complaint with DePaul's Office of Institutional Diversity and Equity ("OIDE"), alleging that the March 28, 2006 written counseling was a form of retaliation and harassment by Shire and Evans. (*Id.* ¶ 38.) Jay Jones, the Diversity Investigator of OIDE, investigated the complaint. (*Id.* ¶ 39.)

On April 3, 2006, Shire and Wachowski became aware of complaints by Kerry Crapia ("Crapia"), the loss-prevention manager for Barnes & Noble ("B&N"), one of DePaul's tenants. (*Id.* ¶ 40.) Crapia complained to Shire that Plaintiff had threatened and made inappropriate remarks regarding Shire and Crapia to Yolanda Beaudion, a B&N Loss Prevention Agent, on three occasions. (*Id.* ¶ 41.)

Naselli investigated the B&N complaint and interviewed Beaudion, who verified the complaints and reported that she felt mentally harassed and concerned by Plaintiff's threatening behavior. (*Id.* ¶ 48.) On April 3, 2006, when Naselli attempted to interview

Plaintiff, he was hostile, argumentative, and refused to cooperate with the investigation, causing Shire to suspend him, pending review by Human Resources. (*Id.* ¶¶ 49-50.)

On April 3, 2006, Plaintiff filed a second complaint with OIDE, against Shire and Naselli. (*Id.* ¶ 52.) Jones conducted a thorough investigation of the April 3, 2006 OIDE complaint, resulting in a 282-page report. (*Id.* ¶ 53.)

On April 5, 2006, Wachowski learned of another incident on March 31, 2006, where Plaintiff abandoned his post at the security desk to move his illegally parked vehicle, leaving the DePaul Center unattended. (*Id.* ¶ 55.) Plaintiff's leaving his post unattended on March 31, 2006, constituted a violation of the Department's General Orders and a Memorandum specifying that PSOs are not entitled to any other break time other than lunch period. (*Id.* ¶ 56.)

After reviewing the events that led to Plaintiff's suspension on April 3, 2006, Wachowski believed that it was necessary to terminate Plaintiff's employment, and he forwarded a summary of events to Washington. (*Id.* ¶ 54.) On April 5, 2006, Wachowski sent a letter to Plaintiff, advising him of the termination of his employment, effective April 5, 2006. (*Id.* ¶ 58.) Plaintiff's employment was terminated for the following: (i) his behavior toward Evans, which resulted in a written counseling on March 28, 2006; (ii) his failure to cooperate with the investigation regarding the B&N complaints, which resulted in his suspension; and (iii) leaving his post on March 31, 2006, which left the DePaul Center unattended. (*Id.* ¶ 59.)

*OIDE's Investigation of Plaintiff's March 29, 2006 and April 3, 2006
Complaints against Shire, Evans, and Naselli*

Between his three OIDE complaints, Plaintiff filed thirty-four allegations, involving retaliatory discharge, verbal harassment, written counseling, and suspension against Shire, Evans, Naselli, and Wachowski. (*Id.* ¶ 61.) OIDE investigated Plaintiff's March 29, 2006 and April 3, 2006 Complaints against Shire, Evans, and Naselli. Jones interviewed Plaintiff and seven other individuals, including two PSOs who worked with Plaintiff, and no one corroborated, recited, or remembered Shire, Evans, or Naselli articulating any harassing or derogatory comments about Plaintiff. (*Id.* ¶ 74.)

On April 10, 2006, Shire received a letter from Jones, dated April 7, 2006, stating that Plaintiff alleged that Shire had retaliated against him by issuing a letter of counseling, verbally harassing him and suspending him due to his prior complaints against Shire, Naselli, and Evans. (*Id.* ¶ 62.) Jones investigated the allegations and determined that Shire had no notice of the discrimination claims contained in the September 12, 2005 complaint or April 11, 2006 OIDE complaint. (*Id.* ¶ 63.) Jones determined that Shire did not become aware of Plaintiff's March 29, 2006 OIDE and April 3, 2006 OIDE complaints until April 10, 2006, 13 days after the written counseling was issued. (*Id.* ¶ 64.)

Jones' investigation concluded that Plaintiff's actions on March 21, 2006, warranted the written counseling and that Plaintiff was suspended on April 3, 2006, due to uncooperativeness. (*Id.*) Accordingly, Jones concluded that Plaintiff's complaint of retaliation against Shire was refuted.

On April 7, 2006, Evans was informed by a letter from Jones that Plaintiff alleged that she: (i) verbally harassed him; (ii) issued him a letter of counseling; and (iii) suspended him because he filed formal complaints against her, Shire, and Naselli. (*Id.* ¶ 67.) Jones investigated the allegations and determined that Evans had no notice of the discrimination claims contained in the September 12, 2005 or the April 11, 2006 complaints and that she did not become aware of Plaintiff's March 29, 2006 and April 3, 2006 complaints until April 7, 2006, 10 days after the written counseling was issued. (*Id.*) Accordingly, Jones concluded that the March 28, 2006 written counseling by Evans was issued without regard to retaliatory motive. (*Id.* ¶ 68.) Furthermore, Jones' investigation concluded that Evans did not suspend or participate in the decision to suspend Plaintiff, and she was not present when Plaintiff was suspended. (*Id.* ¶ 69.) Accordingly, DePaul's investigation determined that the evidence failed to demonstrate that Evans engaged in retaliatory conduct by suspending Plaintiff because she did not cause or participate in the suspension decision, and she did not know of any complaint until after Plaintiff was suspended. (*Id.* ¶ 70.)

By letter dated April 7, 2006, Jones informed Naselli that Plaintiff alleged that Naselli verbally harassed and suspended him because Plaintiff made formal complaints against him, Shire, and Evans. (*Id.* ¶ 71.) Jones investigated the allegations and concluded that because Naselli had no notice of any complaint made by Plaintiff before April 11, 2006, Naselli could not have suspended Plaintiff in retaliation for his prior complaints. (*Id.* ¶ 72.) Jones' investigation also concluded that Naselli lacked any authority to change the conditions of employment of any University employee and,

therefore, Jones determined that Naselli did not participate in the decision to suspend Plaintiff. (*Id.* ¶ 72.) Therefore, DePaul determined that the evidence failed to demonstrate that Naselli engaged in retaliatory conduct by suspending Plaintiff because Naselli did not cause or participate in the suspension decision, and he did not know of any complaint made by Plaintiff before April 11, 2006. (*Id.* ¶ 73.)

### OIDE's Investigation of Plaintiff's April 11, 2006 Complaints against Wachowski

On April 18, 2006, Wachowski was informed by letter from Jones that Plaintiff alleged that Wachowski terminated Plaintiff's employment in retaliation for Plaintiff filing formal complaints: (i) on March 29, 2006, against Shire and Evans; (ii) on April 3, 2006, against Shire, Evans, and Naselli; and (iii) against Shire and Wachowski with the Human Resources Department. (*Id.* ¶ 75.)

Jones investigated and determined that Wachowski had no notice of any of Plaintiff's discrimination-based complaints until at least April 7, 2006, which is after Plaintiff's discharge; and, therefore, Jones concluded that the issue of retaliation was refuted. (*Id.* ¶ 76.) Further, Jones' investigation concluded that Plaintiff was unable to provide an example of a similarly situated individual who engaged in comparable behavior but was not likewise disciplined; and, therefore, Plaintiff was not able to refute that he was discharged for legitimate, non-discriminatory and non-retaliatory reasons. (*Id.* ¶ 78.)

Accordingly, Jones' investigation of all thirty-four of Plaintiff's allegations against Shire, Evans, Naselli, and Wachowski concluded that there was no evidence to

suggest that Plaintiff had been the subject of any discrimination, verbal harassment, or retaliation, and Jones informed Plaintiff of these results. (*Id.* ¶ 79.)

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

*Plaintiff's Failure to Respond*

A briefing schedule was set on April 3, 2012, the day on which Defendant presented its Motion for Summary Judgment.[2] (Dkt. No. 100.) Plaintiff was to respond by June 5, 2012, thus leaving Plaintiff over two months to file a response. Plaintiff was served by Defendant with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," in the form required by Local Rule 56.2; the Notice explained to Plaintiff how to respond to a motion for summary judgment. On June 18, 2012, a week after his response was due, Plaintiff filed a motion to extend the summary judgment briefing schedule. This Court denied his motion. (*See* Dkt. No. 114.)

Federal Rule of Civil Procedure 6(b) gives courts discretion (with certain exceptions not applicable here) to grant extensions of time when deadlines are missed because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012).

In his motion to extend the summary judgment briefing schedule, Plaintiff argued that he could not file a response to DePaul's Motion for Summary Judgment because he was not represented by counsel and his previously-appointed attorneys had damaged his cases due to their lack of diligence. As explained below, this argument lacks merit and certainly does not constitute "excusable neglect."

---

[2] DePaul filed the Motion on March 27, 2012.

In the course of this case, Upton has been represented by two attorneys, both of whom sought to withdraw based on representations that Upton failed to cooperate with them regarding the litigation of his case. Upton was represented by his first attorney from September 1, 2009 through June 16, 2010, when the first attorney's motion to withdraw was granted. (Dkt. Nos. 35, 50.) Upton was represented by his second attorney from June 17, 2010 through October 6, 2011, when the second attorney's motion to withdraw was granted. (Dkt. Nos. 86, 92.)

On April 24, 2012, Plaintiff filed another motion for appointment of counsel, which this Court denied because Plaintiff failed to make a strong showing of good cause as to why counsel should be appointed for a third time. *See* Dkt. No. 106; Local Rule for the Northern District of Illinois 83.39 ("In any action where a second counsel is appointed and subsequently discharged upon request of a party, no additional appointment shall be made except on a strong showing of good cause.").

Plaintiff has failed to respond to DePaul's Motion and must face the consequences. "[D]istrict courts are entitled to expect strict compliance with Local Rule 56.1, which requires that a party opposing summary judgment 'serve and file' its brief and supporting materials." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006).

*DePaul's Motion for Summary Judgment*

In his Second Amended Complaint, Plaintiff brings claims for race discrimination and hostile work environment (Count I), retaliatory discharge (Count II) in violation of Title VII and the same claims, race discrimination and hostile work environment

(Count III) and retaliatory discharge (Count IV) in violation of 42 U.S.C. § 1981. Section 1981 claims are evaluated under the same rubric as Title VII claims. *Herron v. Daimlerchrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004).

*Race Discrimination*

Plaintiff alleges that he was discriminated against on the basis of race when he was disciplined and discharged in violation of Title VII and Section 1981. A plaintiff can state a claim for discrimination in two ways: (i) "direct' method of proof or (ii) "indirect" method of proof. The direct method requires the plaintiff to present either direct or circumstantial evidence of intentional discrimination. Since employers are generally careful not to admit to intentional discrimination, most plaintiffs proceeding by the direct method do so by presenting a "convincing mosaic" of direct or circumstantial evidence that could permit a reasonable jury to conclude that the defendant acted with discriminatory intent. *Brewer v. Bd. of Tr. of Univ. of IL*, 479 F.3d 908, 915 (7th Cir. 2007).

Reviewing solely DePaul's Local Rule 56.1 submission, none of the witnesses in DePaul's internal investigation identified a racially based comment against Plaintiff. Nor has Plaintiff presented any direct or circumstantial evidence of intentional discrimination. Because Plaintiff cannot show any direct evidence of discrimination, Plaintiff must proceed under the indirect method of proof.

To establish a *prima facie* case for discrimination using the indirect method, a plaintiff must prove: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment

action; and (4) similarly situated employees who are not members of the protected class were treated more favorably. *See id.*

For the purposes of summary judgment, DePaul concedes the first and third elements of the indirect method. However, there is no evidence to support either the second or fourth elements of the indirect method. There is no evidence that Plaintiff was meeting DePaul's legitimate expectations, especially against a record that shows Plaintiff reputedly violated DePaul's policies and consequently received verbal and written consultations. Nor is there any evidence in the record that similarly situated employees who are not members of the protected class were treated more favorably than Plaintiff. Because there is no genuine issue of material fact that Plaintiff has not shown race discrimination under either the indirect or direct method, DePaul's Motion for Summary Judgment is granted with respect to Plaintiff's race-discrimination claims in Counts I and III.

*Hostile Work Environment*

To establish a *prima facie* case for a racially hostile work environment, the plaintiff must show that: (i) he was subject to unwelcome harassment; (ii) the harassment was based on his race; (iii) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile or offensive environment that seriously affected his psychological well- being; and (iv) there is a basis for employer liability. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004). Moreover, a plaintiff must be able to show that the alleged harassment was both objectively and subjectively offensive. *Hilt-Dyson v. Chicago,* 282 F.3d 456, 463 (7th Cir. 2002). In

determining whether the contested conduct creates an objectively hostile work environment, a number of factors are considered, including: (i) the frequency of the discriminatory conduct; (ii) whether it is physically threatening or humiliating, or a mere offensive utterance; and (iii) whether it unreasonably interferes with the employee's work performance. *Id.*

Plaintiff has not shown that DePaul engaged in any behavior that would give rise to an objectively hostile work environment. To the contrary, the undisputed evidence shows that DePaul investigated all four complaints filed by Plaintiff and there was no evidence to conclude that Plaintiff was the subject of any discrimination or harassment. Of the seven witnesses interviewed, none identified a racially-harassing comment against Plaintiff. Furthermore, Plaintiff's Second Amended Complaint is void of any allegations that his work environment interfered with his performance or that it seriously affected Plaintiff's psychological well-being. Plaintiff has not established a hostile work environment claim; therefore, DePaul's Motion is granted with respect to Plaintiffs hostile work environment claims in Counts I and II.

*Retaliation*

Title VII forbids an employer from retaliating against an employee who has opposed any practice made unlawful by Title VII or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (*Stephens*). Under the direct method, the plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection

exists between the two. *Id.* at 786. A causal connection between the protected activity and the materially adverse employment action may be established by using either direct or circumstantial evidence. *Id.* at 787.

For the purposes of its Motion, DePaul concedes the first and second elements. But Plaintiff has not demonstrated a causal connection between his internal complaints of discrimination and harassment and the adverse employment action. Although the time lapse between either Plaintiff's September 2005 complaint, March 2006 counseling, March 2006 or April 2006 complaints have enough temporal proximity to the termination of Plaintiff's employment on April 5, 2006, to raise the concern of suspicious timing, this alone is insufficient to create a genuine issue of fact to preclude summary judgment. Indeed, the undisputed evidence, discussed above, demonstrates that there is no evidence that Shire, Evans, Naselli, or Wachowski engaged in retaliatory behavior. (*See* Def.'s 56.1(a)(3) ¶¶ 62-79.)

Plaintiff also cannot establish a *prima facie* case of retaliation under the indirect method. Under the indirect method of establishing unlawful retaliation, a plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action by his employer; (3) he was performing his job satisfactorily; and (4) he was treated less favorably than a similarly situated employee who did not complain of discrimination. *Stephens*, 569 F.3d at 786-87. As discussed above, Plaintiff cannot establish that he performed his job satisfactorily. This is fatal to his claim.

Accordingly, DePaul's Motion for Summary Judgment is granted as to Plaintiff's retaliation claims.

15

## CONCLUSION

For the reasons set forth above, DePaul's Motion for Summary Judgment [94] is granted. Civil case is hereby terminated.

Date: 7-27-12

JOHN W. DARRAH
United States District Court Judge